# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

       Plaintiff,

v.

DONTAE LAMONT HUNT,

       Defendant.

02-CR-333-BR
(07-CV-70013-BR)

OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney
**GARY Y. SUSSMAN**
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1030

       Attorneys for Plaintiff

**MICHELLE A. RYAN**
818 S.W. Third Avenue, #168
Portland, OR  97204

       Attorney for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Dontae Lamont Hunt's Amended Motion to Vacate, Set Aside or Correct Sentence (#143).  For the reasons that follow, the Court **DENIES** Hunt's Amended Motion.


## BACKGROUND

On August 13, 2002, a federal grand jury indicted Hunt on one count of Possession with Intent to Distribute a Substance Containing Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and 18 U.S.C. § 2 and one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).  Defendant remained a fugitive until he was arrested on an outstanding warrant on September 17, 2003.

On October 16, 2003, a federal grand jury returned a Superseding Indictment adding a second count of Possession with Intent to Distribute a Substance Containing Cocaine Base, a second count of Felon in Possession of a Firearm, one count of Carrying a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c), and a count of Criminal Forfeiture pursuant to 18 U.S.C. § 924(c) and 28 U.S.C. § 2461(c).  Finally, on August 25, 2004, a federal grand jury returned a Third Superseding Indictment adding an additional count of Carrying a Firearm During and in Relation to a Drug

Trafficking Crime in violation of 18 U.S.C. § 924(c).

The Court granted Defendant's Motion to Sever Counts and ordered one trial for the counts of Possession with Intent to Distribute a Substance Containing Cocaine Base (the drug counts) and the violation of § 924(c) stemming from Defendant's June 2002 arrest, a second trial for the counts of Possession with Intent to Distribute a Substance Containing Cocaine Base (the drug counts) and the violation of § 924(c) stemming from Defendant's September 2003 arrest, and a third trial on the two counts of Felon in Possession.  The parties agreed to court trials on the two counts of Felon in Possession to be held in conjunction with the two jury trials on the drug counts and the violations of § 924(c).

The first scheduled trial began on December 14, 2004.  On the second day of trial, the Court granted a Motion by the government to admit evidence of an earlier instance in which Defendant had discarded a gun and crack cocaine while running from the police.  After this ruling, the parties entered into a tentative Plea Agreement.  After defense counsel, Dan Feiner, spoke with Defendant, however, he informed the Court that Defendant did not wish to accept the government's plea offer. Feiner also expressed concern about his ability to communicate meaningfully with Defendant.

After excusing the prosecutor, jury, and case agent, the

Court discussed the government's offer with Defendant, repeatedly reminded Defendant that it was his choice whether to accept the plea offer, and advised Defendant that the Court would be willing to go over the plea offer with Defendant paragraph by paragraph. Defendant commented he knew "there's worse [sentences] than [the] 300 months" the government was recommending. The Court reiterated it was "not promising [Defendant] anything" with respect to the plea offer, but the Court wanted Defendant to have a chance to consider it. Although Defendant informed the Court that he wanted to accept the plea offer, the Court insisted Defendant have lunch, speak with his attorney, and come back in an hour to let the Court know his decision.

After the lunch recess, the Court held a hearing at which Defendant entered a guilty plea to two of the drug counts and one count of violating § 924(c).

On January 5, 2005, Defendant, acting *pro se*, sent the Court a letter asking the Court to appoint new counsel for sentencing. On January 20, 2005, the Court held a hearing in which the Court questioned Defendant about his letter and his request for new counsel. The Court concluded Defendant's relationship with Feiner had "broken down." Accordingly, the Court granted Defendant's request for new counsel.

On September 23, 2005, the Court sentenced Hunt to 180 months imprisonment on each of the two drug counts to run

concurrently and 60 months imprisonment to run consecutively on the § 924(c) count. The Court imposed a term of eight years supervised release.

## I. Hunt's Plea of Guilty.

At the Plea hearing on December 15, 2004, the Court reviewed the government's contention that Defendant was a career offender with an offense level of 37. The Court further addressed the possible two-level reduction for acceptance of responsibility, which would decrease Defendant's offense level to 35. The Court also engaged in an extensive colloquy with Defendant about his plea including the following:

THE COURT: Is it true that you signed [the Plea Agreement] after reading all of it and discussing it carefully with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is everything in your petition true and accurate, to the best of your knowledge?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Today are you under the influence of alcohol or drugs or any kind of medication?

THE DEFENDANT: No, ma'am.

THE COURT: Are you thinking clearly?

THE DEFENDANT: Yes, ma'am.

* * *

THE COURT: And under all the circumstances, do you think that the decision to accept the Government's offer, in the end, is a decision in your own best interest?

THE DEFENDANT: Yes, ma'am.

Hearing Dec. 15, 2004, Tr. at 10-11.

The Court also informed Defendant that the Court was "not a party to the [Plea] agreement. The Court is not negotiating with you, and I'm not promising you any particular outcome as part of your agreement with the Government." Defendant indicated he understood.

The Court informed Defendant that the two drug counts "each carry a mandatory minimum sentence of 10 years . . . . Mandatory means that. I would not have the power to go below the mandatory minimum of 10 years on those charges." Hearing Dec. 15, 2004, Tr. at 16. The Court further informed Defendant that the § 924(c) count

> carries also a mandatory minimum sentence of five
> years . . . that . . . has to be run consecutively
> to at least one of the drug charges. What this
> really means is you're looking at a minimum of 15
> years under any scenario . . . . Your actual
> sentencing range, then, starts at a bottom of 15
> years.

Hearing Dec. 15, 2004, Tr. at 18. Defendant indicated he understood both mandatory minimum sentences in general and the total mandatory minimum sentence in this case. The Court reiterated the government agreed to recommend a 300-month sentence on the drug counts and a five-year consecutive sentence on the § 924(c) count. Defendant indicated he understood.

THE COURT : Now, recommending means just that. [The government] make[s] their argument and

> they lay it out. You, under this
> agreement, have the authority to ask for
> what is called a sentencing departure,
> if you have any ground to support it.
> And I can assure you, I will listen to
> you and Mr. Feiner making
> recommendations, just as I will the
> Government. But in all cases, please
> understand, I do not have the authority
> ever to go below the mandatory minimums
> of at least a 15-year block here. Do
> you understand?

THE DEFENDANT: Yes, ma'am.

Hearing Dec. 15, 2004, Tr. at 19.

The Court informed Hunt that the guidelines "also call for,
sometimes, giving three levels for acceptance of responsibility."
The government, however, must recommend the third level. The
Court advised Defendant that Feiner would likely try to convince
the government to recommend a three-level reduction. The Court,
however, cautioned Defendant not to "count on" the government
recommending a three-level reduction. The Court advised
Defendant not to

> base your plea on that hope. I'm just
> saying, that's something I would expect Mr.
> Feiner to continue to ask for, and I'm
> certain Mr. Sussman always will listen.
> We'll just have to wait and see on that
> point. Do you understand?

Hearing Dec. 15, 2004, Tr. at 25-26. Defendant agreed not to
base his plea on that hope. Hearing Dec. 15, 2004, Tr. at 26.

The Court pointed out the Plea Agreement provided the
government would not seek any upward departure and Defendant

7 - ORDER

would not seek any downward departure except as specified. In response, Defendant asked the Court to explain that provision. The Court advised Defendant that departures "are left to the judge's discretion," and "nobody can force a judge to depart." The Court further explained to Defendant that he would not "be free to take back your guilty plea if you ask [for], but I deny[,] a departure" and that the Court "still [would not] have the power to depart below the 15 years, which are the mandatory minimums here." Defendant indicated he understood. Hearing Dec. 15, 2004, Tr. at 26-27.

The Court asked Defendant whether he had been completely honest in his discussions with Feiner, and Defendant responded he had not been honest. The Court admonished Defendant and advised Feiner could not give Defendant "legitimate advice if you haven't been honest with him." The Court noted:

> And even though [Feiner] gives you news you
> may not like or gives you opinions that are
> harsh because of the facts, you understand
> that he can't change the facts. He's not a
> magician. I said that earlier. Do you
> understand?

Hearing Dec. 15, 2004, Tr. at 30. Defendant indicated he did understand. *Id*. The Court then asked Defendant whether he was satisfied with Feiner's advice and services, and Defendant indicated he was satisfied. Defendant also informed the Court he was being truthful when he agreed to the statement in the Plea Agreement that he was satisfied with the legal assistance he had

8 – ORDER

been provided, and he wished to "plead guilty because I am guilty."

The Court engaged in the following exchange with Defendant:

> THE COURT: Other than the pressure that I know you feel because of the exposure you face, has anybody put any pressure on you to plead guilty when you don't want to?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Is this your own voluntary decision?
>
> THE DEFENDANT: Yes, ma'am.
>
> * * *
>
> THE COURT: Okay, then. Other than what's written in these papers, is it true that no one has made any promise to you to persuade you to plead guilty?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: The papers, taken together, represent the full and complete understanding you have of the agreement you've made with the Government?
>
> THE DEFENDANT: Yes, ma'am.

Hearing Dec. 15, 2004, Tr. at 33,34. The Court also inquired whether Defendant had told the Court the truth during the proceedings, and Defendant indicated he had told the truth.

After finding Defendant to be "fully competent" and his guilty plea to be knowing, intelligent, and voluntary, the Court accepted Defendant's plea pursuant to the terms of the Plea

Agreement.

## II. Appointment of New Counsel

After the plea hearing and before sentencing, Defendant, acting *pro se,* sent a letter to the Court in which he stated he believed Feiner had represented him "wrong."  Defendant alleged Feiner told him before his trial that he had "to take a plea" because Defendant was "going to lose."  Defendant further alleged he took the plea under duress on the second day of trial because he was in shock at the time and he didn't know what he was doing. Ultimately Defendant suggested Feiner was ineffective.

On January 20, 2005, the Court held a hearing to address Defendant's letter.  The Court noted it had taken considerable time at the plea hearing to discuss the plea with Defendant, and Defendant had indicated to the Court that he understood what he was doing, that he was not under any pressure or undue influence, and that he was taking the plea voluntarily.  The Court noted it "never would have accepted your plea if you hadn't said to me all the things that you said under oath. . . .  So, I want a chance to understand what's the problem, basically."  Defendant and the Court then had the following exchange:

> THE DEFENDANT: The problem basically, what I wrote you about, I want somebody who is going to represent me, who is going to help me.  I feel like I took a plea under distress.  I mean, I'm guilty of my actions, but I think some areas, he could have helped me more.  Some areas he could have

helped me.

THE COURT:        Well, I don't know what that means,
                  because, Mr. Hunt, you and I had a
                  very long and careful conversation,
                  as I said.

THE DEFENDANT: I was in shock, ma'am.

THE COURT:        Well, you know, you didn't strike
                  me as being in shock.  You and I
                  were having a very direct
                  conversation.  And, you know, what
                  this is leading to is perhaps if
                  you -- if you think there's been a
                  breakdown in your relationship with
                  Mr. Feiner --

THE DEFENDANT: Yeah.

THE COURT:        -- and you want a new lawyer, you
                  know, maybe I could give you a new
                  lawyer to represent you through
                  sentencing, but your plea is here.

THE DEFENDANT: That's what I wanted.

THE COURT:        You're not talking about trying to
                  get out from under your plea.

THE DEFENDANT: No.  I want me a new lawyer.

THE COURT:        Because why?  Tell me why.

THE DEFENDANT: Because it's like a hot-and-cold
                  relationship.  I don't have no good
                  relationship.  Some things I want
                  to ask him and address him, well,
                  [the Court's] not going to do that.
                  Well, just ask [the Court].  The
                  only thing [the Court's] going to
                  say is yes or no, you know.

Hearing Jan. 20, 2005, Tr. at 4-6.

        When the Court asked Defendant what he meant when he told

the Court his relationship with Feiner was "hot-and-cold,"

11  - ORDER

Defendant responded:

> It just seem like he don't want to work for me.
> That's what I feel. It seem like he don't want to
> work for me. We're supposed to have a
> relationship, you know, address the situation,
> like some stuff I'd like to present to you. No,
> [the Court's] not going to -- [the Court's] not
> going to -- I mean, the only thing you have to do
> is say yes or no.

Hearing Jan. 20, 2005, Tr. at 8-9.

Ultimately the Court ordered new counsel for Defendant and noted it

> made clear to Mr. Hunt that the proceedings to
> this stage, including his plea proceedings, are
> all . . . valid and still in force and effect. He
> still remains bound by his pleas of guilty. There
> isn't anything in the letter he wrote to me that I
> think warrants revisiting any of that. And he
> said to me in this in camera proceeding that he
> understood that. He wasn't seeking to be relieved
> of any of his prior pleas. What he is asking for
> is a lawyer who he believes will be a better
> advocate for him as he goes forward to sentencing.

Hearing Jan. 20, 2005, Tr. at 11.

### III. Hunt's Sentencing

Before the sentencing hearing, James Lang, Defendant's new counsel, submitted a sentencing letter to the Court in which he objected to the two-level enhancement for reckless endangerment and to the designation of Defendant as a career offender. Lang argued for a downward departure based on possible diminished mental capacity and urged the Court to impose the mandatory minimum sentence of 15 years imprisonment.

In its sentencing memorandum, the government did not seek

12 - ORDER

enhancement for reckless endangerment or obstruction of justice. The government, however, asserted Defendant was a career offender.

At the sentencing hearing on September 23, 2005, the government again asserted Defendant was a career offender, but the government, nevertheless, recommended a two-level reduction for acceptance of responsibility. The government noted there were not any specific offense characteristics, aggravating factors or mitigating factors that would affect the guideline calculations if the Court designated Defendant as a career offender except for a possible reduction for acceptance of responsibility. The government recommended a sentence of 300 months imprisonment on the two drug counts and a consecutive five-year sentence on the § 924(c) count.

Lang argued a variety of mitigating factors and contended the statutory minimum 15-year sentence would be sufficient.

Defendant also addressed the Court. Defendant stated, "I understand the stuff that I did was wrong. A lot of the stuff I did was wrong. But it just seemed like I ain't never had no fair childhood." Defendant also asserted he was the victim of selective prosecution. Defendant noted:

> All this time I've been sitting incarcerated for
> the last two years. It's been -- Dale O'Connell
> [*sic*] (ph) [Defendant's first attorney] and Dan
> Feiner, they've been telling me 380 months.
> That's the best thing we can get for you, 380
> months. I got the paper right here, ma'am. It's

13  - ORDER

> the best thing I can get for you, 380 months, 362
> months. Regardless -- or whatever you do, you're
> going to get 362 months.

Hearing Sept. 23, 2005, Tr. at 42.

Ultimately the Court concluded the 30-year sentence sought
by the government was not necessary to accomplish the purposes of
the sentencing statutes. The Court, however, also concluded the
15-year mandatory minimum sentence was not sufficient. The
Court, therefore, imposed concurrent sentences of 180 months
imprisonment on the two drug counts and a consecutive 60-month
term of imprisonment on the § 924(c) count for a total of 20
years imprisonment. The Court also imposed eight years of
supervised release.

## IV.  **Hunt's Motion to Vacate Sentence.**

On March 2, 2007, Hunt moved for a reduction of his sentence
pursuant to 28 U.S.C. § 2255 on the ground of ineffective
assistance of counsel at his trial and sentencing. Specifically,
Defendant contends Feiner provided him with ineffective
assistance when he: (1) advised Defendant that the Court could
award the third point for acceptance of responsibility under
United States Sentencing Guidelines § 3E1.1; (2) advised
Defendant that he would only receive a sentence of 15 years; and
(3) failed to notify Defendant of the ramifications of his
relevant-conduct stipulation to "more than 50 but less than 150
grams of cocaine base." Defendant contends Lang also provided

14  - ORDER

him with ineffective assistance by failing to notify the Court
that the government breached the Plea Agreement when it concurred
with the Pre-Sentence Report guideline calculation that included
an adjustment for obstruction of justice even though the
government had agreed in the Plea Agreement that it would not
seek any upward departures or adjustments.

### STANDARDS

The Supreme Court has established a two-part test to
determine whether a defendant has received constitutionally
deficient assistance of counsel. *Strickland v. Washington*, 466
U.S. 668, 678, 687 (1984). Under this test, a defendant must not
only prove counsel's assistance was deficient, but also that the
deficient performance prejudiced the defense. *Id. See also
Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir.), *cert. denied*, 513
U.S. 1001 (1994); *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir.)
(*en banc*), *cert. denied*, 511 U.S. 119 (1994); *Mak v. Blodgett*,
970 F.2d 614, 618 (9th Cir. 1992), *cert. denied*, 507 U.S. 951
(1993).

"To prove deficiency of performance, the defendant must show
counsel made errors so serious that performance fell below an
objective standard of reasonableness under prevailing
professional norms." *Mak*, 970 F.2d at 618 (citing *Strickland*,
466 U.S. at 687-88)). The court must inquire "whether counsel's

15 - ORDER

assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688. There is a strong presumption that counsel's assistance was adequate. *Id.* at 689.

To prove prejudice in the context of a guilty plea, a defendant must establish "there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695. In addition, to establish a claim of ineffective assistance of counsel based on erroneous advice regarding a guilty plea, a defendant "must demonstrate more than mere inaccurate prediction." *Sophanthavong v. Palmeteer*, 378 F.3d 859, 868 (9th Cir. 2004). Erroneous predictions regarding a sentence are deficient "only if they constitute gross mischaracterization of the likely outcome of a plea bargain combined with erroneous advice on the probable effects of going to trial." *Id.*

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

16 - ORDER

**DISCUSSION**

## I.   Trial Counsel's Performance

As noted, Defendant contends Feiner provided him with ineffective assistance when he (1) advised Defendant that the Court could award the third point for acceptance of responsibility under U.S.S.G. § 3E1.1, (2) advised Defendant that he would only receive a sentence of 15 years, and (3) failed to notify Defendant of the ramifications of his relevant-conduct stipulation to "more than 50 but less than 150 grams of cocaine base."

### A.   Three-Point Reduction for Acceptance of Responsibility

Defendant contends Feiner told Defendant that he would receive a three-level reduction for acceptance of responsibility. Even if Feiner made this assurance, it is questionable whether it would constitute ineffective assistance of counsel or merely an "inaccurate prediction."

Moreover, even if Feiner made such an assurance and that assurance constituted more than an inaccurate prediction, Defendant has not established prejudice.  The Court told Defendant during the plea hearing that the government would have to recommend a three-level reduction before the Court could award such a reduction.  The Plea Agreement provided the government would recommend only a two-level reduction, and the Court also informed Defendant at least twice during the plea hearing that

17  -  ORDER

the government was requesting only a two-level reduction.  The
Court also told Defendant that the government could change its
mind, but "don't count on it.  In other words, don't base your
plea on that hope."  Defendant indicated he understood.  The
Court, therefore, concludes Defendant has not established "a
reasonable probability that, but for counsel's errors,
[Defendant] would not have pleaded guilty and would have insisted
on going to trial."

Finally, even if Defendant had received a three-level
reduction, the guideline range for Defendant's sentence would
have been 262-327 months.  The Court imposed a sentence of 180
months, which is 80 months below the guideline range after a
three-level reduction.

Accordingly, the Court concludes Defendant has not
established he was prejudiced by Feiner's alleged assurances
regarding a three-level reduction for acceptance of
responsibility.

B.    **15-Year Sentence Promise**

In his Affidavit, Feiner testifies he never advised
Defendant that he would receive a sentence of only 15 years.  In
addition, Defendant did not allege at any time during the Court's
colloquy at the plea hearing or in the Court's discussion with
Defendant on January 20, 2005, that Feiner had advised him he
would receive only 15 years imprisonment.  Instead Defendant

agreed at the plea hearing that "no one had made any promise to
[him] to persuade [him] to plead guilty." At the January 20,
2005, hearing, Defendant did not allege his problems with Feiner
stemmed from assurances regarding the length of his sentence.
Accordingly, the Court finds the record belies Defendant's claim
that Feiner promised him a 15-year sentence.

          Even if the record supported Defendant's claim that
Feiner told him he would receive a 15-year sentence, Defendant
has not established prejudice arising from such an assertion.
The written Plea Agreement establishes the government intended to
seek a sentence well above 15 years. In addition, the Court
engaged in a lengthy colloquy with Defendant regarding the fact
that 15 years was the minimum sentence the Court could impose,
and the Court was not bound by the Plea Agreement or anything
else to give Defendant the minimum sentence. The Court also
informed Defendant that he could receive a higher sentence if he
was found guilty after a trial. Defendant indicated he
understood all of these points and even asked the Court for
clarification on the issues of sentence reduction and downward
departures.

          Based on this record, the Court concludes Defendant has
not established "there is a reasonable probability that, but for
counsel's errors, [Defendant] would not have pleaded guilty and
would have insisted on going to trial." Even if Feiner told

19 - ORDER

Defendant that he would receive a sentence of only 15 years, the
written Plea Agreement and the Court's extensive colloquy with
Defendant were sufficient to inform Defendant that he was in no
way assured of a 15-year sentence.  In fact, both the Plea
Agreement and the Court's colloquy made clear that Defendant was
likely to receive a much more substantial sentence.

### C. Stipulation to Drug Quantity

Defendant contends Feiner "failed to notify [him] of
the ramification of the relevant conduct stipulation" that
"defendant's relevant conduct . . . is more than 50 but less than
150 grams of cocaine base."  Because Defendant is designated as a
career offender, however, the quantity of drugs involved in this
matter was irrelevant to his sentence.  Under United States
Sentencing Guidelines § 4B1.1(b), the offense level is 37 for the
drug counts in combination with Defendant's status as a career
offender regardless of the precise quantity of cocaine base
involved.  As the Court explained in the sentencing hearing:

> So it doesn't matter if there's obstruction of
> justice.  It doesn't matter if there's reckless
> endangerment.  It doesn't matter if any of the
> aggravating guidelines apply for purposes of an
> offense level unless they would otherwise take the
> offense level above 37, and they can't in this
> particular combination.
>
> MR. SUSSMAN:  The only reason that they would have
> an effect, Your Honor, would be if for some reason
> you found that Mr. Hunt did not qualify for
> enhanced sentencing as a career offender.

Hearing Sept. 23, 2005, Tr. at 20.

Accordingly, the Court concludes Defendant has not established any prejudice arising from Feiner's alleged failure to discuss with Defendant the ramifications of stipulating to the amount of cocaine.

## II.  Sentencing Counsel's Performance

Defendant contends Lang provided ineffective assistance of counsel during sentencing because he did not bring to the Court's attention the fact that the government breached the Plea Agreement.  The government contends it did not breach the Plea Agreement, and, therefore, there was nothing for Lang to bring to the Court's attention.

Defendant asserts the government breached the provision of the Plea Agreement in which the government agreed not to seek any upward adjustments when the government agreed with the Pre-Sentence Report guideline calculation that included an upward adjustment for obstruction of justice.  To support his assertion, Defendant relies on the cover sheet of the Pre-Sentence Report that reflects the government supported an upward adjustment for obstruction of justice.

At sentencing, however, the government asserted Defendant was a career offender, and, rather than advocating for an upward adjustment, the government informed the Court that there were not any "[aggravating] or mitigating factors . . . that would affect the guideline calculations, apart from the adjustment for

acceptance of responsibility." Hearing Sept. 23, 2005, Tr. at

19. The government noted any sentence enhancements would only

become relevant if the Court concluded Defendant was not a career

offender, and then the Court "would have to make findings on

those issues."

The Court finds the record does not support Defendant's

assertion that the government sought any upward adjustments or,

in any event, that it would have made a difference in Defendant's

sentence. As the Court noted at sentencing:

> The 37 is greater than -- the guideline 37 offense
> level is greater than any of the base offense
> level plus enhancement applications that would
> otherwise apply. It trumps everything.
>
>                           * * *
>
> And I failed to make that point when I was
> speaking with Mr. Hunt earlier. I was thinking
> only of the base offense level itself and the
> adjustments to it. So it doesn't matter if
> there's obstruction of justice. It doesn't matter
> if there's reckless endangerment. It doesn't
> matter if any of the aggravating guidelines apply
> for purposes of an offense level unless they would
> otherwise take the offense level above 37, and
> they can't in this particular combination.

Hearing Sept. 23, 2005, Tr. at 20. The Court, therefore,

concludes even if the government advocated for an upward

adjustment in violation of the Plea Agreement, Defendant has not

established any prejudice would have arisen from such a breach.

Accordingly, the Court concludes Lang did not provide

Defendant with ineffective assistance when he failed to raise the

issue of the government's alleged breach of the Plea Agreement.

## **CONCLUSION**

For these reasons, the Court **DENIES** Defendant's Amended
Motion to Vacate, Set Aside or Correct Sentence (#143).

IT IS SO ORDERED.

DATED this 30th day of October, 2007.

_(signature)_

ANNA J. BROWN
United States District Judge